## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KELLY J. BARLEAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-23-00488-JD |
| | ) | |
| OKLAHOMA COUNTY CRIMINAL | ) | |
| JUSTICE AUTHORITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendant Oklahoma County Criminal Justice Authority's

("OCCJA") Motion to Dismiss Plaintiff Kelly J. Barlean's Amended Complaint

("Motion") [Doc. No. 12]. The operative complaint is Mr. Barlean's First Amended

Complaint ("FAC") [Doc. No. 8]. Mr. Barlean brings this 42 U.S.C. § 1983 action

against OCCJA under a municipal liability theory, and he brings his Title II of the

Americans with Disabilities Act ("ADA") claim against OCCJA under a respondeat

superior liability theory. *See* FAC ¶ 5. Barlean's claims against OCCJA stem from his

eight-day pretrial detention at the Oklahoma County Detention Center ("OCDC") in June

2021. Barlean filed a response in opposition ("Response") [Doc. No. 34] to OCCJA's

Motion. No reply was filed by OCCJA.

OCCJA moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss

Barlean's claims against it. Specifically, OCCJA moves to dismiss Counts 1, 2, 13, 14,

and 17 for failure to state a claim upon which relief can be granted.[1] For the reasons stated below, the Court grants the Motion to the extent specified in this Order.

## I.     BACKGROUND

The Court's previous Order denying Plaintiff's Motions to Deem Allegations Admitted by Defendants Jesse Childers, Dustin Willis, Brandon Lee, Taylor Ray, and Adrian Dominguez Solis [Doc. No. 69] provides a recitation of the factual background of this action and is incorporated herein by reference. Accordingly, this Order will reiterate only what is necessary to address OCCJA's Motion.

## II.     LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not need detailed factual assertions, a pleading that offers only "labels and conclusions" or "pleads facts that are merely consistent with a defendant's liability" will not suffice. *Id.* (internal quotation marks and citations omitted).

---

[1] OCCJA further moves to dismiss Counts 15 and 16, but those Counts in the FAC cannot fairly be construed as being brought against OCCJA. Mr. Barlean also concedes Counts 15 and 16 are not brought against OCCJA. *See* Response at 11 ("Count Sixteen of the [FAC] specifically states it is against only guard John Doe #2"); *id.* at 10 (arguing that Count 15 is against Roe and based on "Roe's actions"). Barlean has sued the individual defendants in their individual capacities. Thus, the Court does not address OCCJA's arguments relating to Counts 15 and 16.

The burden is on the plaintiff to plead factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Under this standard, the Court accepts all well-pled factual allegations as true and views the allegations in the light most favorable to the nonmoving party. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). "This is not to say that the factual allegations must themselves be plausible; after all, they are assumed to be true. It is just to say that relief must follow from the facts alleged." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). Conclusory statements, however, are not entitled to the assumption of truth and courts are free to disregard them. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in his complaint, but the elements of each cause of action help to determine whether the plaintiff has set forth a plausible claim. *Id.* at 1192. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted).

Although Mr. Barlean "proceeds *pro se*, he is not entitled to have his filings liberally construed because he is a trained attorney." *See McNamara v. Brauchler*, 570 F. App'x 741, 743 (10th Cir. 2014) (unpublished); *see also Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007) (explaining that "[w]hile we generally construe pro se pleadings liberally, the same courtesy need not be extended to licensed attorneys") (internal citations omitted). This also includes disbarred attorneys. *See McNamara*, 570

F. App'x at 743 n.2 (explaining that the purpose of liberal construction of pro se filings is not furthered by liberally construing a legally trained individual's filings).

## III.    <u>ANALYSIS</u>

### A.    The Court dismisses without prejudice Mr. Barlean's alleged disability discrimination claims in Count 1 as to OCCJA.

Count 1 of the FAC alleges violations of the ADA[2] and § 504 of the Rehabilitation Act ("RA") against Defendants OCCJA, Mark Winchester ("Dr. Winchester"),[3] and Turn Key Health Clinics, LLC ("Turn Key").[4] OCCJA contends that Mr. Barlean has failed to allege a plausible claim under the ADA because Mr. Barlean cannot establish he is disabled within the meaning of the ADA. Specifically, OCCJA contends that Barlean provides "no proof" of a "prescription in 2021" for a CPAP[5] machine, "no proof of

_____

[2] As noted above, Barlean brings his ADA action against OCCJA under a respondeat superior liability theory. *See* FAC ¶¶ 5, 79. The Court assumes without deciding that this theory applies. *Cf. A.V. through Hanson v. Douglas Cnty. Sch. Dist. RE-1*, 586 F. Supp. 3d 1053, 1067 (D. Colo. 2022) ("Absent any binding authority to the contrary from within the Tenth Circuit, the Court will follow the guidance from the other circuit courts which have concluded that Title II of the ADA provides for *respondeat superior* liability.").

[3] Mr. Barlean withdraws his ADA claim against Dr. Winchester in his Response. Response at 4. An ADA or RA claim cannot proceed against individual defendants; the proper defendant is the government agency. *See* 42 U.S.C. § 12131; *see also Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) (recognizing that employees of the governmental agency "are not amenable to suit under the [RA] or the ADA"). Thus, the Court dismisses with prejudice Count 1 to the extent it seeks to impose liability on Dr. Winchester.

[4] Turn Key and Dr. Winchester have filed a separate joint motion to dismiss [Doc. No. 18], which the Court will address by separate order.

[5] For informational purposes only, the Court notes that a CPAP (a Continuous Positive Airway Pressure) machine "uses mild air pressure to keep . . . airways open

disability or limitations from interrupted or delayed treatment," and no proof of a

complete diagnosis of sleep apnea in 1999.[6] Motion at 13–14.[7]

In response, Barlean contends that he is a qualified individual disabled within the

meaning of Title II of the ADA and § 504 of the RA. Response at 4–5. Barlean attaches

to his Response pages 2 and 3 of the 1999 sleep study he underwent at Providence

General Medical Center in Everett, Washington, on July 13, 1999. [Doc. No. 34-3 at 2–

4]. Also attached is a Nasal CPAP 1 Study conducted on November 21, 1999, at the same

facility following Barlean's ENT surgery. *See id.* at 5–6. This study concludes that

Barlean tolerated "the use of [a] nasal CPAP with very significant therapeutic benefit

noted . . . in [a] patient with severe obstructive sleep apnea." *See id.* at 5. In that same

report, Dr. O'Connor recommends that Barlean "undertake nasal CPAP therapy at 11 cm

water pressure with a 5- to 10-minute ramp time and heated humidification with the mask

to be fitted with a suggestion that a Profile Gold Seal light mask be considered for home

---

while you sleep" and is prescribed by physicians "to treat sleep-related breathing
disorders including sleep apnea." *See* https://www.nhlbi.nih.gov/health/health-
topics/topics/cpap (last visited Oct. 10, 2024).

[6] Attached to the FAC is only page 1 of 3 of a 1999 sleep study at Providence
General Medical Center in Everett, Washington, performed on July 13, 1999. [Doc. No.
8-6]. Pages 2 and 3 are missing, and the conclusions appear to relate only to the initial
phase of the study and are incomplete. *See id.* In analyzing a motion to dismiss under
Rule 12(b)(6) for failure to state a claim, the Court may consider documents that the
complaint incorporates by reference, documents referred to in the complaint that are
central to the plaintiff's claims and as to which the parties do not dispute authenticity, and
matters of which the Court may take judicial notice. *See Gee v. Pacheco*, 627 F.3d 1178,
1186 (10th Cir. 2010).

[7] The Court uses CM/ECF page numbering from the top of docket filings in this
Order.

use." *See id.* at 6. Dr. O'Connor indicates that a "prescription for this therapy has been

provided." *See id.* Additionally, Barlean attaches a printout from the United States

Department of Veterans Affairs website for "Kelly" showing a 100 percent combined

disability rating and a 50 percent individual rating for a service-connected disability of

obstructive sleep apnea with an effective date of January 11, 2019. [Doc. No. 34-4 at 2].

However, any new factual allegations contained in Barlean's Response cannot

amend the allegations contained in his FAC. Therefore, the Court looks to the FAC to

determine the sufficiency of Barlean's allegations under Federal Rule of Civil Procedure

12(b)(6). *See* Fed. R. Civ. P. 7(b); *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771

F.3d 697, 706 (10th Cir. 2014) ("We have recognized the importance of Fed. R. Civ. P.

7(b) and have held that normally a court need not grant leave to amend when a party fails

to file a formal motion.") (quoting *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181

F.3d 1180, 1186 (10th Cir. 1999)). *See also Earles v. Cleveland*, 418 F. Supp. 3d 879,

892 n.3 (W.D. Okla. 2019), *aff'd*, 825 F. App'x 544 (10th Cir. 2020) (unpublished)

(disregarding factual allegations in the plaintiff's response brief that were beyond the

scope of her complaint because a plaintiff may not effectively amend a complaint by

alleging new facts in a response to a motion to dismiss).

Under Title II of the ADA, "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of

the services, programs, or activities of a public entity, or be subjected to discrimination

by any such entity." 42 U.S.C. § 12132. "This provision extends to discrimination against

inmates detained in a county jail." *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500

F.3d 1185, 1193 (10th Cir. 2007). A plaintiff may establish an ADA discrimination claim either by direct evidence of discrimination or by satisfying the burden-shifting framework of *McDonnell Douglas*.[8] *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018). Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *See id.* The burden then shifts to the defendant to produce a "legitimate, non-discriminatory reason" for the adverse action. *See id.* at 1193 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant articulates a sufficient reason, the burden shifts back to the plaintiff to show that the "stated reason is a pretext for discrimination." *Id.*

The *McDonnell Douglas* requirement that a plaintiff establish a prima facie case "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).[9] Although Mr. Barlean need not establish a prima facie case of discrimination under the ADA in his FAC to survive a motion to dismiss, the Court still looks to the elements of his claim to help determine whether he has set forth a plausible claim. *See Khalik*, 671 F.3d at 1192. To state a discrimination claim under the ADA, a "plaintiff must allege that (1) he is a qualified individual with a disability, (2) who was

---

[8] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[9] In clarifying the role of the *McDonnell Douglas* framework in a Rule 12(b)(6) analysis, the Tenth Circuit has explained that "[w]hile the 12(b)(6) standard does not require that [the plaintiff] establish a prima facie case in [the] complaint, the elements of each alleged cause of action help to determine whether [the plaintiff] has set forth a plausible claim." *See Khalik*, 671 F.3d at 1192; *see also Morman v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015) (unpublished) ("The inferences offered by the *McDonnell Douglas* framework assist judges in resolving motions to dismiss by providing an analytical framework to sift through the facts alleged.").

excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson*, 500 F.3d at 1193. Conversely, an ADA "failure to accommodate claim is evaluated under a modified *McDonnell Douglas* burden-shifting framework."[10] *Lincoln*, 900 F.3d at 1204. Thus, under the modified framework, "a plaintiff must demonstrate that (1) he is disabled; (2) he is otherwise qualified; and (3) he requested a plausibly reasonable accommodation." *See id.* (brackets, internal quotation marks, and citations omitted).[11] If a plaintiff makes that showing, "the burden 'shifts to the [defendant] to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as

---

[10] *See Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 792 (10th Cir. 2020) (reiterating that ADA failure to accommodate claims are evaluated under a modified *McDonnell Douglas* burden-shifting framework). Under the ADA, the term "discriminate against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *See* 42 U.S.C. § 12112(b)(5)(A). It makes an exception for those covered entities that "can demonstrate that the accommodation would impose an undue hardship on the operation" of their business. *See id.* "Because any failure to provide reasonable accommodations for a disability is necessarily because of disability," naturally a plaintiff "need not prove the [defendant's] motivation or intent to discriminate to prevail on a failure to accommodate claim." *See Lincoln*, 900 F.3d at 1204 (internal quotation marks and citation omitted). Thus, courts evaluate such claims under a modified *McDonnell Douglas* burden-shifting framework. *See id.*

[11] *See Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020) (noting that "[e]stablishing a prima face claim is not onerous" and identifying four elements a plaintiff must show to establish a prima facie failure to accommodate claim: (1) the plaintiff was disabled, (2) the plaintiff was otherwise qualified, (3) the plaintiff requested a plausibly reasonable accommodation, and (4) the defendant refused to accommodate the plaintiff's disability).

undue hardship . . . .'" *See Lincoln*, 900 F.3d at 1204 (quoting *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017)).

Here, the parties do not address *McDonnell Douglas* or its burden-shifting framework. Nevertheless, the Court concludes that Mr. Barlean has failed to state either an ADA discrimination claim or a failure to accommodate claim in his FAC against OCCJA.

A disability within the meaning of the ADA is required for both claims. "Disability" under the ADA is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). Barlean, however, attaches to the FAC an incomplete sleep study conducted in 1999 [Doc. No. 8-6], which references only an initial phase of the study and does not provide a definitive diagnosis of severe obstructive sleep apnea. Thus, he fails to plead sufficient facts to state a disability within the meaning of the ADA for either claim.[12]

Different than his failure to accommodate claim, to recover on his discrimination claim, Barlean must also allege that OCCJA acted with discriminatory ill will against him because of his disability. *See Aubrey*, 975 F.3d at 1014 (citing *Lincoln*, 900 F.3d at 1204). In the absence of direct evidence of OCCJA's discriminatory intent, the Court applies the *McDonnell Douglas* burden-shifting framework as noted above. *See id.* Barlean makes a

---

[12] The Court notes that even the additional materials Barlean attaches to his Response do not indicate a 2021 prescription for a CPAP machine. Regardless, Barlean cannot amend his FAC through his Response, and the Court confines its analysis to the FAC.

conclusory allegation that without a CPAP machine, he was "unable to participate in other OCDC programs or activities like the non-disabled inmates due to excessive fatigue." FAC ¶ 77. Yet, he does not identify what, if any, programs he was unable to participate in that other inmates were allowed to participate in, nor does he allege that other inmates were being allowed to use CPAP machines. In fact, he alleges the opposite.[13] In summary, Barlean provides no plausible allegations that he was discriminated against by OCCJA because of his medical condition or disability. Rather, according to his allegations, he was treated just like every other inmate.[14]

OCCJA does not specifically address Mr. Barlean's RA claim, which is also included in Count 1. With very few exceptions, none of which are relevant here, courts evaluate RA claims identically to those brought under the ADA. *See Cline v. Clinical Perfusion Sys., Inc.*, 92 F.4th 926, 931 (10th Cir. 2024); *Crane v. Utah Dep't of Corr.*, 15

---

[13] *See, e.g.*, FAC ¶¶ 51, 223 (Barlean allegedly asked for a CPAP machine, but he was told that none were provided to inmates); *id.* ¶¶ 60, 226 (alleges he asked Dr. Winchester, but that he allegedly responded that "there were no CPAPs for inmates"); *id.* ¶ 71 (alleges that inmates in the maximum-security gang pod were not allowed CPAPs); *id.* ¶ 83 (alleges that he and other inmates with severe sleep apnea were not provided CPAPs during his incarceration in June 2021); *id.* ¶¶ 84–85 (alleges that current and future inmates are denied access to CPAPs under Turn Key's current contract with OCCJA).

[14] Mr. Barlean's allegations may fall squarely within the scope of a Fourteenth Amendment inadequate medical care claim, rather than under the ADA or RA. *See, e.g.*, *Henard v. Albers*, Civil Action No. 21-cv-3123-WJM-MDB, 2024 WL 1858501, at *3 (D. Colo. Apr. 29, 2024) (noting that "purely medical decisions" do not typically fall within the scope of the ADA or the RA) (citing *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005)). Count 14 of the FAC, which is addressed below, already encompasses a Fourteenth Amendment inadequate medical care claim against OCCJA, Turn Key, and Dr. Winchester.

F.4th 1296, 1302 n.4 (10th Cir. 2021). Thus, Mr. Barlean fails to state a RA claim for the same reasons he fails to state an ADA discrimination or failure to accommodate claim, and the Court dismisses without prejudice Count 1 as to OCCJA.

**B.    The Court dismisses without prejudice Count 2 as to OCCJA for failure to state a claim.**

In Count 2, Barlean seeks "declaratory/injunctive relief enjoining performance of [an] unconstitutional contract between [OCCJA] and Turn Key in violation of the Eighth and Fourteenth Amendments." FAC at 16. OCCJA asserts that Barlean fails to allege a plausible claim because the contract does not prohibit Turn Key from obtaining medical devices and submitting the bill to OCCJA or asking an OCCJA purchasing officer to obtain such devices. Motion at 15. OCCJA also asserts that Barlean makes the "inferential leap" that a CPAP machine is a "prosthetic device" as the term is used in the contract. *See id.* Additionally, OCCJA asserts that Barlean lacks standing to seek injunctive relief because he is not a beneficiary or party to the contract, and his request is moot because he is no longer an inmate at OCDC. *See id.* at 16.

In response, Barlean "withdraws his request for a declaratory judgment and for nominal damages" in Count 2, but he asserts that he has Article III standing to seek monetary damages and injunctive relief because he is serving a three-year deferred sentence with supervised probation and faces the possibility of going back to the OCDC if he were to violate the terms of his deferred sentence. Response at 13. He does not assert anything in response to OCCJA's other two arguments.

As the Court understands it, Barlean's claim in Count 2 is that the agreement for comprehensive health services [Doc. No. 8-7] between Turn Key and OCCJA violates Barlean's Eighth and Fourteenth Amendment rights to adequate medical care and his rights under the ADA because the contract allegedly denies "the procurement of breathing prosthetic devices (CPAPs) for inmates with severe obstructive sleep apnea." FAC ¶ 92A. Barlean references the clause in the agreement that states that the "Contractor [i.e., Turn Key] shall not be responsible for the provision of eyeglasses, contact lenses, hearing aids, hearing aid supplies, or any other prosthetic devices." [Doc. No. 8-7 at 5]; FAC ¶ 87. "Prosthetic devices" are not defined under the agreement.

Where, as here, the original complaint has been superseded by the FAC, the Court examines the FAC in assessing Mr. Barlean's claims, "including the allegations in support of standing." *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013) (quoting *Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007)). "Nevertheless, standing is determined at the time the action is brought," thus, the Court will "generally look to when the complaint was first filed, not to subsequent events to determine if a plaintiff has standing." *Id.* at 1153 (internal quotation marks and citation omitted). Mr. Barlean filed his original complaint on June 5, 2023. [Doc. No. 1]. He asserts in his Response that the State's Application to Accelerate his Deferred Sentence [Doc. No. 34-6] filed on June 16, 2023, presents a real risk that he will likely end up in the OCDC again sometime in the future.[15]

---

[15] Taking judicial notice of the docket report on the Oklahoma State Courts Network, available at http://www.oscn.net, in Oklahoma County Case No. CM-2022-

"A 'plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1306 n.3 (10th Cir. 1998) (quoting *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991)). Here, Mr. Barlean fails to demonstrate such in his FAC, and the Court declines to speculate that Mr. Barlean will likely end up in the OCDC again sometime in the future. *See id.*; *see also Martin v. City of Okla. City*, 180 F. Supp. 3d 978, 993–94 (W.D. Okla. 2016) (concluding the plaintiff had not identified or properly presented any facts from which to find a credible threat that he would be prosecuted in the future under the same city ordinance on which his declaratory judgment claim was based; thus, he lacked standing). Barlean cannot amend his FAC through his Response, and his allegations that the State is attempting to accelerate his deferred sentence are not included in the FAC. Thus, Mr. Barlean lacks standing to assert declaratory and injunctive relief for his claim in Count 2 against OCCJA. Nonetheless, he also appears to seek monetary damages.

The Court applies the same standard to a pretrial detainee's claim for deliberate indifference to his serious medical needs under the Fourteenth Amendment as it does to a prisoner's claim for deliberate indifference under the Eighth Amendment. *See Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020). "To state a cognizable claim, [a plaintiff]

---

4468 (last visited Oct. 10, 2024), the Court notes that the State has filed and dismissed applications to accelerate Mr. Barlean's deferred sentence since the sentence was entered on January 5, 2023. It appears that the most recent application to accelerate was filed on August 14, 2024, and remains pending, and that Mr. Barlean has also filed a motion to terminate his probation early. However, none of this is alleged in his FAC, and the Court does not look to subsequent events to determine if Barlean has standing.

'must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *See id.* (quoting *McBride v. Deer*, 240 F.3d 1287, 1289 (10th Cir. 2001)). This standard includes an objective and a subjective component. *Id.* The objective component is established if the alleged deprivation is "sufficiently serious to constitute a deprivation of constitutional dimension." *See id.* at 989–90 (internal quotation marks and citation omitted). To that end, the "medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *See id.* at 990 (brackets and citation omitted). To satisfy the subjective component, "a plaintiff must allege that [the defendant] possessed the requisite intent, together with objectively indifferent conduct, to state a claim for deliberate indifference." *See id.* at 992 (emphasis omitted).

Where a plaintiff seeks to hold a local government entity liable under § 1983, he must also show that a municipal policy or custom "was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997); *see* FAC ¶ 5. Thus, it appears that Barlean is relying on the language in the agreement as the policy or custom behind his alleged injury in Count 2. The agreement simply states that "[t]he Contractor [i.e., Turn Key] shall not be responsible for the provision of . . . prosthetic devices." [Doc. No. 8-7 at 5]; *see also* FAC ¶ 87 (same). As OCCJA points out, it says nothing about OCCJA's responsibility as to prosthetic devices. In other words, leaving aside whether a "prosthetic device" includes a CPAP machine, Barlean's allegations fail to show that the agreement was the "moving force" behind his

14

alleged injury. The agreement does not indicate that Turn Key was prohibited from obtaining a CPAP machine and billing OCCJA for it, nor does it prohibit Turn Key from asking an OCCJA purchasing officer to obtain one. At most, it relieves Turn Key of the responsibility of procuring and paying for an undefined prosthetic device. It says nothing of OCCJA's obligations. Thus, the Court dismisses without prejudice Count 2 as to OCCJA.

**C.    The Court dismisses without prejudice Count 13 as to OCCJA for failure to state a claim.**

Count 13 alleges a civil conspiracy under § 1983 to classify Barlean as an "unaffiliated gang member," to deny him a CPAP machine, and to "forc[e] him to smuggle gold" into the OCDC. FAC ¶¶ 208–11.[16] "A civil conspiracy claim requires a plaintiff to plead: (1) a deprivation of constitutional rights; and (2) the elements of a conspiracy." *Seymour v. Garfield Cnty.*, 580 F. Supp. 3d 1039, 1058 (D. Utah 2022) (citing *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990)). "The elements of a conspiracy are: (1) 'two or more persons acting in concert; and (2) an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective.'" *Id.* (quoting *Brooks v. Gaenzle*, 614 F.3d 1213, 1227–28 (10th Cir. 2010), *abrogated by Torres v. Madrid*, 592 U.S. 306 (2021) (citations omitted) (numbering added)). Here, Mr. Barlean fails to state a plausible claim because he fails to allege a deprivation of constitutional rights by OCCJA.

---

[16] While Count 13 does not expressly name OCCJA, it includes allegations that appear directed at OCCJA. *See* FAC ¶ 216. Therefore, the Court addresses Count 13 as to OCCJA.

Starting with his allegation that officers forced him to smuggle gold, he does not allege what municipal policy or custom was the "moving force" behind his alleged injury. Presumably, the OCDC or OCCJA would have a policy outlining the procedure to be used when admitting inmates to include procedures on removal, inventory, and storage of personal property. *See, e.g.*, Okla. Admin. Code § 310:670-5-1(4) (2019) (stating that city and county detention facilities "shall have written policies and procedures for the reception, orientation and release of inmates" to include "[t]he types of personal property inmates may retain in their possession during confinement"). Yet, Barlean identifies no such policy, which is fatal to his municipal liability theory against OCCJA.

Barlean's allegations of an "unaffiliated gang member" classification also fail to state a constitutional deprivation by OCCJA. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *see also Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) ("A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered."). "Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a 'retraction justified by the considerations underlying our penal system.'" *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974) (citation omitted). The Supreme Court has established that a protected liberty interest is at issue in a prison setting only when an inmate is subjected to (1) conditions that "impose[] atypical and significant hardship on

16

the inmate in relation to the ordinary incidents of prison life" or (2) actions that

"inevitably affect the duration of his sentence." *Sandin v. Conner*, 515 U.S. 472, 484, 487

(1995). "[T]he government may subject those awaiting trial to the conditions and

restrictions of incarceration so long as those conditions and restrictions do not amount to

punishment." *Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090, 1106 (10th Cir. 2005). No

process is required if a pretrial detainee is placed in segregation for a managerial purpose.

*See id.*

Here, Barlean does not allege adverse consequences beyond the general

constraints of pretrial detention or how his alleged placement or segregation caused

significant hardship or affected his sentence. His allegation is that he was transferred to

"the Maximum-Security Gang Pod" after becoming involved in a physical altercation

with his cellmate. *See* FAC ¶¶ 52–54. The Tenth Circuit has held, however, "that there is

no constitutionally protected liberty interest in a prison classification." *Bey v. Simmons*,

69 F. App'x 931, 932 (10th Cir. 2003) (unpublished) (citing *Templeman v. Gunter*, 16

F.3d 367, 369 (10th Cir. 1994)). Additionally, the United States Supreme Court has "held

that the Constitution itself does not give rise to a liberty interest in avoiding transfer to

more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221. It appears that

Barlean's primary concern is that the classification change was retaliation by Defendants

Jordache Roe and Solis and other officers. *See* FAC ¶¶ 207, 210. But Barlean does not

allege that the officers' retaliation was for any constitutionally protected activity.

"Without a constitutional violation, [Barlean] has suffered no injury for which a

municipality can be liable." *Frey v. Town of Jackson*, 41 F.4th 1223, 1239 (10th Cir. 2022).

That brings the Court to Barlean's civil conspiracy claim related to the denial of a CPAP machine. Regardless of whether this is analyzed under a conditions-of-confinement claim[17] or a deliberate-indifference-to-medical-care claim under the Fourteenth Amendment, Barlean does not allege a plausible constitutional violation. He asserts, at most, a delay in medical treatment not resulting in substantial harm. *See McCowan v. Morales*, 945 F.3d 1276, 1291 (10th Cir. 2019) ("A delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm. The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain.") (brackets and citation omitted).

Here, Barlean alleges, based on a 1999 incomplete sleep study, that he suffers from severe obstructive sleep apnea that requires him to use a CPAP machine to avoid a stroke. He alleges that he awoke in the OCDC "gasping for breath" and that he believed he was experiencing a stroke. FAC ¶ 222. After calling for medical assistance, he was seen by a nurse in the infirmary. *Id.* He alleges that the nurse made an appointment for him to see the medical director, and he admits that he was thereafter evaluated by Dr. Winchester. *Id.* ¶¶ 223, 227. Additionally, Barlean alleges that Dr. Winchester indicated in his notes that if Barlean was not released the following week, he would contact the VA

---

[17] "Conditions-of-confinement claims have two prongs: (1) an objective prong, under which the alleged injury must be sufficiently serious, and (2) a subjective prong, under which the prison official who imposed the condition must have done so with deliberate indifference." *Redmond v. Crowther*, 882 F.3d 927, 936 n.3 (10th Cir. 2018).

to request a CPAP prescription. *Id.* ¶ 61; *see also* [Doc. No. 8-12 at 2]. This was on

Barlean's seventh day of pretrial detention, and Barlean was released the following day.

*See* FAC at 10. Dr. Winchester's notes also indicate that Barlean was "without

resp[iratory] distress," but was suffering from "mild opiate withdrawal." *See* [Doc. No. 8-

12 at 2].

In other words, according to Barlean's allegations in his FAC, he was examined

by a physician upon presenting with his complaints, and the documents attached to the

FAC indicate Dr. Winchester had a plan in action and that Barlean was not suffering from

any serious harm. Barlean does not allege a lifelong handicap, permanent loss, or

considerable pain, and he was released before he could test Dr. Winchester's intent of

obtaining a prescription for a CPAP. Thus, Mr. Barlean fails to state a plausible claim for

civil conspiracy under § 1983 as to OCCJA because he fails to allege a deprivation of

constitutional rights by OCCJA based on any of the three theories.

**D.     Mr. Barlean fails to state a cognizable claim for deliberate indifference to his medical needs by OCCJA, and the Court dismisses without prejudice Count 14 as to OCCJA.**

In Count 14, Barlean alleges a deprivation of his civil rights by deliberate

indifference under § 1983 against Defendants Turn Key, Dr. Winchester, and OCCJA,

essentially repeating the same allegations addressed above. Barlean, at most, alleges a

delay in medical treatment not resulting in substantial harm or "medical malpractice,"

neither of which are sufficient to state a claim for deliberate indifference. *See, e.g.*,

*Estelle v. Gamble*, 429 U.S. 97, 105–07 (1976) (explaining that a physician's negligence

did not rise to the level of "unnecessary and wanton infliction of pain" required to state a

cognizable claim for deliberate indifference); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (explaining that deliberate indifference requires "more than ordinary lack of due care").

Again, Barlean's allegations indicate he was seen by a nurse in the infirmary and then evaluated by the medical director, Dr. Winchester. Dr. Winchester's notes indicate that Mr. Barlean was not in any type of respiratory distress, but was experiencing mild opiate withdrawal symptoms consistent with what Barlean had reported to the physician, i.e., a dependence on Norco. *See* [Doc. No. 8-12 at 2]. Dr. Winchester's reported plan was to request a CPAP prescription from the VA if Barlean was not released that week. *See id.* A difference of opinion in medical treatment, however, does not suffice to state a cognizable claim for deliberate indifference. *See, e.g.*, *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) (explaining that the Tenth Circuit has rejected such an expansive view of the rights protected by the Eighth Amendment where the plaintiff's case boiled "down to a contention that he had a right to a particular course of treatment: the use of a wheelchair"); *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976) (explaining that a difference in opinion as to treatment or diagnosis between a prisoner and medical staff alone could not give rise to a cause of action for deliberate indifference to serious medical needs). Thus, Mr. Barlean fails to state a cognizable claim for deliberate indifference by OCCJA, and the Court dismisses without prejudice Count 14 as to OCCJA.[18]

---

[18] To the extent that Mr. Barlean alleges that Dr. Winchester was a "gatekeeper" in preventing him from receiving treatment, the Court also concludes that Barlean fails to

**E.      The Court dismisses without prejudice Count 17 as to OCCJA.**

Finally, Count 17 alleges a § 1983 deprivation against OCCJA and Turn Key for having an "unconstitutional government policy of not providing prescribed medical prosthetic devices to inmates." FAC at 52. This claim appears to closely mirror Count 2. Barlean relies on the language at page 5 of the comprehensive health services agreement between Turn Key and OCCJA as the policy or custom behind his alleged injury. *See* [Doc. No. 8-7 at 5]; *see also* FAC ¶ 254. However, Barlean's allegations fail to show that the agreement was the "moving force" behind his alleged injury. The provision in the agreement, at most, relieves Turn Key of the responsibility of procuring and paying for prosthetic devices, which are not defined under the agreement. It says nothing of OCCJA's obligations. Additionally, Barlean, at most, alleges a delay in medical treatment not resulting in substantial harm. *See McCowan v. Morales*, 945 F.3d 1276, 1291 (10th Cir. 2019) (explaining that "substantial harm" may include "lifelong handicap, permanent loss, or considerable pain" (citation omitted)). Accordingly, the Court dismisses without prejudice Count 17 as to OCCJA.

---

state a plausible claim for deliberate indifference under a gatekeeping theory. *See* FAC ¶ 228; *see also Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1143 (10th Cir. 2023). The FAC does not allege "the functional equivalent of a complete denial of care" by Dr. Winchester. Rather, Dr. Winchester examined Barlean and concluded he was not in respiratory distress but was experiencing mild opiate withdrawal symptoms consistent with Barlean's report of a Norco dependency. Dr. Winchester made note of same in Barlean's file (presumably for other medical staff to see) and developed a plan of action, i.e., to request a CPAP prescription from the VA if Barlean was not released that week. *See* [Doc. No. 8-12 at 2]. Barlean was released the following day. This does not amount to Dr. Winchester preventing Barlean from receiving treatment or denying him access to someone capable of evaluating Barlean's need for treatment. *See Lucas*, 58 F.4th at 1137.

IV.    **<u>CONCLUSION</u>**

For these reasons, the Court GRANTS Defendant Oklahoma County Criminal Justice Authority's Motion to Dismiss Plaintiff Kelly J. Barlean's Amended Complaint [Doc. No. 12]. The Court dismisses without prejudice Counts 1, 2, 13, 14, and 17 as to Oklahoma County Criminal Justice Authority. The Court also dismisses with prejudice Count 1 to the extent it seeks to impose liability on Dr. Winchester.

IT IS SO ORDERED this 11th day of October 2024.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE