IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELLY J. BARLEAN, | ) |
|       Plaintiff, | ) |
| v. | ) Case No. CIV-23-00488-JD |
| OKLAHOMA COUNTY CRIMINAL JUSTICE AUTHORITY, et al., | ) |
|       Defendants. | ) |

**ORDER**

Before the Court is Defendants Turn Key Health Clinics, LLC ("Turn Key") and Mark Winchester's ("Dr. Winchester") Joint Motion to Dismiss Plaintiff Kelly J. Barlean's First Amended Complaint ("Motion") [Doc. No. 18]. The operative complaint is Mr. Barlean's First Amended Complaint ("FAC") [Doc. No. 8]. Barlean filed a response in opposition ("Response") [Doc. No. 35], and Turn Key and Dr. Winchester filed a joint reply [Doc. No. 36].

Turn Key and Dr. Winchester move under Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims against them in the FAC, including Counts 1, 2, 14, and 17.[1] They assert that Barlean has failed to state a claim because he does not allege

---

[1] Mr. Barlean also sues Defendant Britney Pettit, in her individual capacity, asserting that Ms. Pettit acted under color of state law as an employee and/or agent of Turn Key. *See* FAC ¶ 14. Turn Key notes in its Motion that Ms. Pettit is a nurse and employee of Turn Key, but that Ms. Pettit has not been served with Mr. Barlean's FAC. *See* Motion at 6 n.1. From the Court's review, no service of process has been effected on Ms. Pettit, who is named in Count 13 of the FAC. This Order will not address Ms. Pettit or Count 13, but the Court will issue a separate show cause order to Barlean regarding service of process on Ms. Pettit.

sufficient facts (1) to show that he suffered an underlying constitutional deprivation by a Turn Key employee, (2) to state a constitutional claim based on a municipal liability theory, and (3) to state an Americans with Disabilities Act ("ADA") or a Rehabilitation Act ("RA") claim.[2] The Court grants the Motion and dismisses the claims against Turn Key and Dr. Winchester.

I. **BACKGROUND**

Mr. Barlean's claims against Turn Key and Dr. Winchester stem from his eight-day pretrial detention in the Oklahoma County Detention Center ("OCDC") in June 2021, following his arrest by Oklahoma City Police Department officers at his home. In Count 1, Barlean alleges violations under the ADA and RA against Turn Key.[3] In Count 2, Barlean seeks "declaratory/injunctive relief enjoining performance of [an] unconstitutional contract between [the Oklahoma County Criminal Justice Authority ("OCCJA")] and Turn Key in violation of the Eighth and Fourteenth Amendments." FAC at 16.[4] Count 14 alleges deprivation of civil rights by deliberate indifference under § 1983 against Turn Key and Dr. Winchester. Count 17 alleges a § 1983 deprivation "by

---

[2] In an abundance of caution, Turn Key also moves to dismiss any potential claim for medical negligence under state law. Motion at 29–30. Mr. Barlean notes in his Response that he "is not alleging medical malpractice, negligence, or even a delay in treatment," nor is he "making any state law claims." Response at 9. The Court concludes that this issue is moot because Mr. Barlean is not asserting a state law negligence claim against Turn Key.

[3] As noted in the Court's previous order, Mr. Barlean withdrew Count 1 against Dr. Winchester, and the Court dismissed with prejudice Count 1 to the extent it sought to impose liability on Dr. Winchester. *See* [Doc. No. 70 at 4 n.3].

[4] The Court uses CM/ECF page numbering from the top of docket filings in this Order.

unconstitutional government policy of not providing prescribed medical prosthetic devices to inmates" against Turn Key. FAC at 52. Barlean brings his 42 U.S.C. § 1983 claims against Turn Key under a municipal liability theory, and he brings his ADA claim against Turn Key under a respondeat superior liability theory. *See id.* ¶ 6. He alleges that Dr. Winchester, "at all relevant times herein, was acting under color of law as [an] employee and/or agent of . . . Turn Key," and sues Dr. Winchester "in his individual capacity." *Id.* ¶ 15.

The Court's previous Order addressing OCCJA's motion to dismiss [Doc. No. 70] sets forth the applicable legal standards under Federal Rule of Civil Procedure 12(b)(6) and pro se filings by a trained attorney, and the Court incorporates them herein by reference. Additionally, because Turn Key and Dr. Winchester are named in some of the same claims as OCCJA, this Order will reiterate only what is necessary to address this Motion.

## II.   ANALYSIS

**A.   The Court dismisses without prejudice Mr. Barlean's alleged disability discrimination claims in Count 1 as to Turn Key for the same reasons it dismissed those claims as to OCCJA.**

Count 1 of the FAC alleges violations of the ADA and RA against Turn Key. Mr. Barlean fails to plead sufficient facts to satisfy a disability within the meaning of the ADA or RA. Rather, Barlean attaches to the FAC an incomplete sleep study conducted in 1999 [Doc. No. 8-6], which references only an initial phase of the study and does not provide any definitive diagnosis of severe obstructive sleep apnea. Additionally, Barlean does not identify what, if any, programs he was unable to participate in that other inmates

3

were allowed to participate in, nor does he allege that other inmates were being allowed to utilize CPAP machines. Rather, he alleges the opposite. *See* [Doc. No. 70 at 10 n.13]. Thus, Barlean offers no plausible allegations that he was discriminated against by Turn Key because of his medical condition or disability. Instead, according to his allegations, he was treated just like every other inmate. Accordingly, the Court dismisses without prejudice Mr. Barlean's claims against Turn Key in Count 1.

**B.     Mr. Barlean fails to allege sufficient facts in Count 14 to state a municipal liability claim against Turn Key.**

Essential to any § 1983 action is that the defendant was acting under color of state law. *See Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995). A municipality is "included among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). Additionally, *Monell*'s municipal liability theory extends to private entities acting under color of state law. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 & n.13 (10th Cir. 2003).

To state a municipal liability claim, "a plaintiff must allege facts showing (1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023). Key to "*Monell* liability is that municipal entities are liable for only their own actions and not vicariously liable for the actions of their employees." *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1191 (10th Cir. 2020); *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (explaining that municipalities are not liable under § 1983 for solely employing "a tortfeasor"). However, "[b]ecause municipalities act through officers,

ordinarily there will be a municipal violation only where an individual officer commits a constitutional violation." *See Crowson*, 983 F.3d at 1191. Thus, municipal liability arises when an individual defendant violates a pretrial detainee's rights while aligning with an official municipal policy or custom. *See Brown*, 520 U.S. at 403–04 (explaining a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury").

Identifying "conduct properly attributable to the municipality," however, is not enough. *See id.* at 404. "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *See id.*

### (1)   *Policy or Custom*

"Notably, 'more than one district court has held that, in assessing the pleading standard for municipal liability, the court requires more than boilerplate allegations of a municipal policy, but does not demand specific facts that prove the existence of a policy when a plaintiff would not have access to such information before discovery.'" *See Callier v. Pottawatomie Cnty. Pub. Safety Ctr. Tr.*, CIV-23-594-G, 2024 WL 1340595, at *8 (W.D. Okla. Mar. 5, 2024) (quoting *D.G. ex rel. Bradley v. Westville Pub. Sch. Dist. No. 1-11 of Adair Cnty.*, Case No. CIV-18-045-RAW, 2018 WL 4323917, at *2 (E.D. Okla. Sept. 10, 2018)). Although this is a "low threshold . . . for surviving a motion to dismiss," the only policy Barlean identifies in his FAC is the comprehensive health services agreement between Turn Key and OCCJA. *See id.*; *see also* [Doc. No. 8-7]; FAC ¶ 254. He specifically references the clause in the agreement at page 5, which states that the "Contractor [i.e., Turn Key] shall not be responsible for the provision of eyeglasses,

contact lenses, hearing aids, hearing aid supplies, or any other prosthetic devices." [Doc. No. 8-7 at 5]. Relying on that provision in the agreement, Barlean alleges that Turn Key had a "governmental policy of not providing CPAPs to inmates with the life-threatening medical condition of severe Obstructive Sleep Apnea." FAC ¶ 255. The problem with such a theory is that the agreement itself does not define "prosthetic devices," nor does it explicitly reference CPAP machines.

### (2) Causation—"Moving Force"

Given the "low threshold" at this stage, even assuming the above was sufficient to identify a policy, Barlean's own allegations negate that Turn Key had a policy of denying CPAP machines. Dr. Winchester's notes attached to the FAC indicate that if Barlean was not released "this week," Dr. Winchester would request a CPAP prescription from the VA. [Doc. No. 8-12]. In other words, the agreement does not prohibit Turn Key from directly obtaining a CPAP machine or of obtaining one from another facility; at most, it relieves Turn Key of the responsibility of procuring and paying for an undefined prosthetic device.

"[I]t is not enough for a § 1983 plaintiff merely to identify" a policy attributable to the municipality, but rather a plaintiff must also show that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404. "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *See id.*

Barlean's allegations do not support an inference that Turn Key's comprehensive health services agreement with OCCJA caused the alleged violation of his right to adequate medical care. "For causation . . . 'the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right.'" *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1241 (10th Cir. 2020) (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013)). Here, Barlean does not plausibly allege the causation element of his *Monell* claim.

### (3) *Deliberate Indifference*

"In the municipal liability context, deliberate indifference is an objective standard which is satisfied if the risk is so obvious that the official should have known of it." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 n.5 (10th Cir. 1998). There is no allegation that Dr. Winchester "deliberately or consciously fail[ed] to act when presented with an obvious risk." *Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997) (citations omitted). To the contrary, he developed a plan to treat Mr. Barlean's reported opiate withdrawal symptoms and to secure a CPAP prescription from the VA should Barlean not be released from custody within the week. Barlean was released the very next day.

Mr. Barlean has failed to state a plausible claim against Turn Key under a municipal liability theory. Consequently, the Court dismisses Count 14 against Turn Key without prejudice.

**C.     Mr. Barlean fails to allege sufficient facts to satisfy the subjective component of a deliberate indifference claim as to Dr. Winchester; thus, the Court dismisses without prejudice Count 14 as to Dr. Winchester.**

Due process under the Fourteenth Amendment entitles pretrial detainees to the same degree of adequate medical care as convicted inmates under the Eighth Amendment. *Lucas*, 58 F.4th at 1136. When an official is deliberately indifferent to a pretrial detainee's "serious medical needs," the pretrial detainee's due process rights are violated. *See id.*

"Deliberate indifference contains both an objective and subjective component." *See id.* The objective component is satisfied if the deprivation alleged is "'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The subjective component is met if the official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. Thus, the official must be aware of facts from which the inference of a substantial risk of serious harm could be drawn and must also draw that inference. *See id.*

The Tenth Circuit recognizes two theories that satisfy the subjective component of a deliberate indifference claim against an individual defendant—(1) a failure to properly treat theory; or (2) a gatekeeper theory, i.e., someone "who prevents an inmate from receiving treatment or denies access to someone capable of evaluating the inmate's need for treatment." *Lucas*, 58 F.4th at 1137. The Tenth Circuit has noted that it is possible to have "some medical care and still state a claim under the gatekeeper theory." *See id.* at 1139. "[D]oing nothing in the face of serious medical needs" states a claim under either theory. *See id.*

Beginning with a failure to properly treat, Barlean's allegations and attached exhibits to his FAC indicate that his medical needs were addressed in a timely fashion. After being booked-in to the OCDC, he was evaluated by Britney Pettit, LPN, on June 7, 2021, around 9:30 a.m. [Doc. No. 8-10 at 2]. Nurse Pettit's exam notes reflect that Barlean reported no significant mental or physical disability. *See id.* He reported no injuries "due to arrest or booking," and Nurse Pettit noted that Barlean did not show any signs of, nor did he complain of, "significant injury, . . . respiratory distress, chest pains, . . . or other emergent condition requiring immediate treatment." *See id.* at 3. Additionally, Barlean reported that his last healthcare visit was the month prior in May 2021. *See id.* Nurse Pettit noted the medications that Barlean was currently taking, and she indicated Barlean had signed a release of information for the Oklahoma City VA. *See id.* Her notes reflect that Barlean was not currently using any prosthesis or medical device. *See id.* She noted he was diabetic, and that he was currently taking Metformin for his diabetes. *See id.* Nurse Pettit opined that Mr. Barlean's mental health was stable, and he was placed in general population. *See id.* at 4.

The following day, on June 8, 2021, Barlean reported medical concerns, and he was immediately taken to the infirmary to be examined. FAC ¶¶ 50–51. Dr. Winchester's notes indicate that Clonidine HCL (Catapres) was prescribed and ordered for Barlean to treat elevated blood pressure or agitation. [Doc. No. 8-12 at 2]. Dr. Winchester's exam notes also reflect that Barlean was seen by Dr. Winchester on June 14, 2021. *See id.* There is no indication from the FAC or its attached exhibits that Barlean reported any additional medical issues between June 8 and June 14, 2021. On June 14, Barlean

requested his CPAP from home, and Dr. Winchester advised that he would request a CPAP prescription from the VA if Barlean was not released that week. *See id.* Barlean advised Dr. Winchester that he was suffering from three "days of mild opiate withdrawal," and his symptoms included sweating and sleep disturbance. *See id.* Dr. Winchester indicated that Barlean was shaky and weak, but that he was not in respiratory distress. *See id.* Dr. Winchester developed a plan to address Barlean's opiate withdrawal and to request a CPAP if Barlean was not released. *See id.* Barlean was released the following day.

Thus, taking Barlean's allegations as true, Barlean was provided ongoing medical care by Dr. Winchester, and Dr. Winchester actively set forth a plan toward obtaining a CPAP machine for Barlean. A "mere disagreement over a course of treatment" is not sufficient to state a claim. *See Lucas*, 58 F.4th at 1140. Barlean's allegations, at most, "amount to a differing opinion as to the course of treatment." *Smith v. Allbaugh*, 987 F.3d 905, 911 (10th Cir. 2021).

To the extent that Mr. Barlean alleges that Dr. Winchester was a "gatekeeper" in preventing him from receiving treatment, the Court also concludes that Barlean fails to state a plausible claim for deliberate indifference under a gatekeeping theory. *See* FAC ¶ 228; *see also Lucas*, 58 F.4th at 1143. The FAC does not allege "the functional equivalent of a complete denial of care" by Dr. Winchester. *See id.* at 1139. Rather, Dr. Winchester examined Barlean and concluded he was not in respiratory distress but was experiencing mild opiate withdrawal symptoms consistent with Barlean's report of a Norco dependency. Dr. Winchester made note of same in Barlean's file (presumably for

10

other medical staff to see), and he developed a plan of action, i.e., to request a CPAP prescription from the VA if Barlean was not released. Barlean was released the following day. This does not amount to Dr. Winchester preventing Barlean from receiving treatment or denying him access to someone capable of evaluating Barlean's need for treatment. *See id.* at 1137. Thus, under either theory, Barlean fails to allege sufficient facts to satisfy the subjective component of the deliberate indifference standard, and he fails to state a plausible claim.[5]

**D.    The Court dismisses without prejudice Count 2 as to Turn Key for failure to state a claim.**

In Count 2, Barlean seeks "declaratory/injunctive relief enjoining performance of [an] unconstitutional contract between [OCCJA] and Turn Key in violation of the Eighth and Fourteenth Amendments." As noted by the Court in its previous order, Barlean lacks standing to assert declaratory and injunctive relief for his claim in Count 2. *See* [Doc. No. 70 at 13]. Barlean's claim for monetary damages also fails because his allegations do not support an inference that the comprehensive health services agreement was the "moving

---

[5] To the extent that Barlean asserts additional facts in his Response, the Court disregards such allegations. Barlean cannot amend or add to his allegations through his Response, and the Court does not allow it here. *See* Fed. R. Civ. P. 7(b); *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697, 706 (10th Cir. 2014) ("We have recognized the importance of Fed. R. Civ. P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion.") (quoting *Calderon v. Kan. Dep't of Soc. & Rehab Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999)). *See also Earles v. Cleveland*, 418 F. Supp. 3d 879, 892 n.3 (W.D. Okla. 2019), *aff'd*, 825 F. App'x 544 (10th Cir. 2020) (unpublished) (disregarding factual allegations in the plaintiff's response brief that were beyond the scope of her complaint because a plaintiff may not effectively amend a complaint by alleging new facts in a response to a motion to dismiss).

force" behind his alleged injury. Accordingly, the Court dismisses without prejudice Count 2 as to Turn Key.

**E.     The Court dismisses without prejudice Count 17 as to Turn Key.**

Count 17 alleges a § 1983 deprivation against OCCJA and Turn Key for having an "unconstitutional government policy of not providing prescribed medical prosthetic devices to inmates." FAC at 52. Again, Barlean relies on the language at page 5 of the comprehensive health services agreement between Turn Key and OCCJA as the policy or custom behind his alleged injury. *See* [Doc. No. 8-7 at 5]; *see also* FAC ¶ 254. However, as noted above, Barlean's allegations do not support an inference that Turn Key's comprehensive health services agreement with OCCJA caused the alleged violation of his right to adequate medical care. Accordingly, the Court dismisses without prejudice Count 17 as to Turn Key.

**III.    CONCLUSION**

For these reasons, the Court GRANTS Defendants Turn Key Health Clinics, LLC and Mark Winchester's Joint Motion to Dismiss Plaintiff Kelly J. Barlean's First Amended Complaint [Doc. No. 18]. The Court dismisses without prejudice Counts 1, 2, 14, and 17 as to Turn Key. Additionally, the Court dismisses without prejudice Count 14 as to Dr. Winchester. To the extent Count 1 seeks to impose liability on Dr. Winchester, as already noted in its prior order, *see* [Doc. No. 70 at 4 n.3 and 22], the Court dismisses with prejudice Count 1 as to Dr. Winchester.

IT IS SO ORDERED this 11th day of October 2024.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE